# In the United States District Court
# for the Southern District of Georgia
# Statesboro Division

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 611-013 |
| | * | |
| DABBS-WILLIAMS GENERAL CONTRACTORS, LLC; TILLMAN PARK, LLC; AND T. HOLMES RAMSEY, JR., | * * * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Plaintiff Westfield Insurance Company ("Westfield" or "Insurer"). Dkt. No. 24. For the reasons stated below, Plaintiff's motion is **GRANTED**.

## BACKGROUND

The present dispute grew out of a construction project in Statesboro, Georgia. Tillman Park, LLC and T. Holmes Ramsey (collectively "Tillman") hired Defendant Dabbs-Williams ("Dabbs-Williams" or "Insured") to build a condominium complex across from the main entrance to Georgia Southern University. Dkt. No. 39, Attach. A-1.

AO 72A
(Rev. 8/82)

Eventually, the relationship between Dabbs-Williams and Tillman deteriorated. Dkt. No. 26, Ex. 1 35:1-12. In October 2007, after the completion of the project, Dabbs-Williams filed suit against Tillman in the Superior Court of Bulloch County alleging that Tillman had not fully paid Dabbs-Williams for its work. Dkt. No. 1, Ex. A. In response, Tillman filed counterclaims against Dabbs-Williams for, among other things, negligent and defective construction and for breach of implied duty to perform in a fit and workmanlike manner. Dkt. No. 1, Ex. B. Specifically, Tillman alleged that because of Dabbs-Williams's negligent excavation of the crawl space, the "excavations [were] collect[ing] and hold[ing] water and creat[ing] moisture problems for the individual units and the structure as a whole." Dkt. No. 1, Ex. B ¶ 43. Also, Tillman alleged it had incurred "substantial costs in correcting the defects and repairing the damages" that resulted from Dabbs-Williams's negligent construction and breach of implied duties. Dkt. No. 1, Ex. B ¶¶ 45, 51. Tillman also alleged that it had incurred damages because the construction defects had "caused a substantial delay in [Tillman's] ability to sell the units." Dkt. No. 1, Ex. B ¶¶ 46, 52. Finally, in the professional affidavit attached to Tillman's counterclaim, Tillman's expert stated that Dabbs-Williams's "construction of excavated crawl

spaces [would] cause moisture problems in the units, including but not limited to mold and mildew spores, rot, wood destroying organisms, and other structural problems." Boyles Aff., Dkt. No. 26, Ex. 2 ¶ 10.

Upon receipt of the counterclaim, Dabbs-Williams conferred with its counsel and decided not to file a notice of a claim with its insurance company, Westfield, because Dabbs-Williams concluded it was "a non-coverable issue.". Dkt. No. 26, Ex.1 24:1-5. The notice provisions in Dabbs-Williams's insurance policy required that Westfield be "notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Dkt. No. 1, Ex. E. The insurance policy also required notice of a "suit" to be given as soon as practicable, with "suit" defined as "a civil proceeding in which damages because of . . . 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." Dkt. No. 1, Ex. E.

For two years, the Superior Court of Bulloch County stayed discovery while determining the enforceability of a mandatory arbitration provision in the construction contract between Dabbs-Williams and Tillman. Dkt. No. 30, 5-6. After denying the motion to compel arbitration, the superior court turned once again to the merits of the suit and directed that the parties

3

proceed with discovery. Dkt. No. 30, 6. In May 2010, Tillman responded to Dabbs-Williams's supplemental discovery requests and further expanded its allegations of negligence and faulty construction to other parts of the building. Dkt. No. 30, 5; Dkt. No. 33, Ex. 1. Tillman amended its counterclaim to reflect these new allegations. Dkt. No. 33, Ex. 1.

On June 10, 2010, two years and seven months after the filing of the initial counterclaim, Dabbs-Williams notified Westfield of the pending suit. Dkt. No. 29 ¶ 23. Dabbs-Williams's explanation for this lengthy delay was that it thought the initial claims were limited to construction defects in the crawl space, whereas the later amendments added construction defects in the building envelope. Dkt. No. 30, 1-2. As such, Dabbs-Williams believed that, although the initial claims were not covered by the policy, these amended claims would be. Dkt. No. 30, 1-2.

Westfield began defending Dabbs-Williams in the state court litigation, but pursuant to a Non-Waiver Agreement, Dabbs-Williams reserved its right to file this declaratory judgment action in federal court. Dkt. No. 24, Ex. 1 ¶ 22.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no

4

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## DISCUSSION

Summary judgment is appropriate here because no reasonable jury could conclude that Dabbs-Williams's notice to Westfield was given "as soon as practicable" as required by the policy. Dabbs-Williams's explanation is insufficient, and the delay was unreasonable as a matter of law.

There is no question that the notice provisions here are valid. <u>See</u> e.g., <u>Federated Mut. Ins. Co. v. Ownbey Enters., Inc.</u>, 627 S.E.2d 917 (Ga. Ct. App. 2006); <u>Plantation Pipeline Co. v. Royal Indem. Co.</u>, 537 S.E.2d 165 (Ga. Ct. App. 2000);

Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d 245 (Ga. Ct. App. 1976). Under Georgia law, "notice provisions are made a condition precedent to coverage so that insurers can be certain that they are given the opportunity to investigate the facts surrounding an incident promptly and to prepare a defense or settlement while the facts are still fresh and witnesses are still available." Illinois Union Ins. Co. v. Sierra Contracting Corp., 744 F. Supp. 2d 1349, 1351 (N.D. Ga. 2010). The duty to provide notice "is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the occurrence in question." S.C. Ins. Co. v. Coody, F. Supp. 234, 237 (M.D. Ga. 1997).

When, as here, the insured has offered a justification for the delay, the standard for evaluating that justification is objective reasonableness. See Forsehee v. Emp'rs Mut. Cas. Co., 711 S.E.2d 28, 31-32 (Ga. Ct. App. 2011). "[I]f a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim, the failure of the insured to give notice of the event is justified and no bar to coverage." Id. at 31. Generally, whether an insured gave reasonable notice is a question for the factfinder. Plantation Pipeline, 537 S.E.2d at 167. However, "'[u]nder all the facts and circumstances of a particular case[,] it may be found that an

insured's delay in giving notice of an accident to his insurer was unjustified and unreasonable' as a matter of law." Id. (citing Richmond, 231 S.E.2d at 249). This is one of those cases; Dabbs-Williams's delay of over two and a half years was unreasonable as a matter of law.[1]

To justify its delay, Dabbs-Williams focuses on the amendments Tillman made to its counterclaim in May 2010. Dabbs-Williams makes two related, but distinct arguments based on those changes. First, Dabbs-Williams argues that, when Tillman amended its counterclaim to include construction defects in other parts of the building, the counterclaim changed so fundamentally that the change constituted a new "occurrence." Dkt. No. 30. Second, Dabbs-Williams asserts that the insurance policy would not have offered any coverage for the initial counterclaims filed by Tillman. Dkt. No. 38. According to Dabbs-Williams, only after the later amendments were any of the claims even potentially covered. Dkt. No. 38.

---

[1] Georgia law does not require prejudice to the insurer when the notice provisions are made a condition precedent to coverage. See Se. Express Sys., Inc. v. S. Gaur. Ins. Co. of Ga., 482 S.E.2d 433, 436 (Ga. Ct. App. 1997). Here, the notice provisions are a condition precedent to coverage. Dabbs-Williams has admitted that the policy here has "identical notice requirements" as the policy in Trinity Universal. Dkt. No. 30, 18; see Trinity Universal Ins. Co. v. Ga. Cas. & Sur. Co., No. 1:08-cv-1332-JOF, 2009 WL 1174659 (N.D. Ga. Apr. 28, 2009). And, in that case, the court held that compliance with the notice provisions was a condition precedent to coverage. Id. at *3.

7

The additions made in Tillman's amended counterclaim did not constitute a separate occurrence. Tillman's amendments in May 2010 did not change the nature of the counterclaims, but merely enlarged their scope. Compare Dkt. No. 1, Ex. B, with Dkt. No. 33, Ex. 1. Tillman did not add any additional counts. Most of the counterclaim remained intact. The most significant change was that Tillman specifically listed additional instances of construction defects under Count I, the negligence claim. Compare Dkt. No. 1, Ex. B ¶ 43, with Dkt. No. 33, Ex. 1 ¶ 45. As such, Tillman's filing of its amended counterclaim cannot constitute a new occurrence for notice purposes. The amendments were not as monumental as Dabbs-Williams suggests.

Secondly, Dabbs-Williams's conclusion that its insurance policy provided no potential coverage for Tillman's initial counterclaim was unreasonable. Under Georgia law, "while construction defects constituting a breach of contract are not covered by [Commercial General Liability] policies, negligently performed faulty workmanship that damages other property may constitute an 'occurrence.'" Hathaway Dev. Co., Inc. v. Am. Empire Surplus Lines Ins. Co., 686 S.E.2d 855 (Ga. Ct. App. 2009), aff'd, 707 S.E.2d 369 (Ga. 2011). The record here does not support Dabbs-Williams's conclusion that the initial counterclaim was limited to defects in the crawl space and "did

not involve any claims of damage to other portions of the construction project or the need for any repairs or remediation of resulting damage." Dkt. No. 30.

Far from being limited, Tillman's initial counterclaim referenced extensive problems and substantial damages. The counterclaim described "moisture problems for the individual units and the structure as a whole." Dkt. No. 1, Ex. B ¶ 43. Tillman also alleged it had incurred "substantial costs in correcting the defects and repairing the damages" that resulted from Dabbs-Williams's conduct. Dkt. No. 1, Ex. B ¶¶ 45, 51. In the expert affidavit attached to the counterclaim, Tillman's expert stated that the defects in the crawl spaces would "cause moisture problems in the units, including but not limited to mold and mildew spores, rot, wood destroying organisms and other structural problems." Boyles Aff., Dkt. No. 26, Ex. 2 ¶ 10. Although Dabbs-Williams may have subjectively and optimistically hoped that the initial counterclaims would prove to be very limited, that belief was objectively unreasonable.

Furthermore, Georgia law and the policy itself require notice if there <u>may</u> be a claim. See <u>Forsehee</u>, 711 S.E.2d at 31. Given that Dabbs-Williams admits that, when it received the initial counterclaim, it was unsure as to the extent of what Tillman was claiming, it was unreasonable for Dabbs-Williams to

9

Case 6:11-cv-00013-LGW-GRS   Document 51   Filed 09/27/12   Page 10 of 11

conclude there was no possibility that anything in the counterclaim might be covered. Dkt. No. 26, Ex. 1 18:16-25, 19:1-8.

Also, as discussed above, the changes Tillman made when it amended its counterclaim were relatively insignificant. Dabbs-Williams has not put forth any persuasive explanation for why the initial claims would not be covered, but the amended claims would be. Whether the construction defects were in the crawl space or the building envelope is, in this instance, a distinction without a difference.

Given that Dabbs-Williams's justification for the delay is unreasonable as a matter of law, this Court must next determine whether the notice Dabbs-Williams gave Westfield in June 2010 complies with the notice provisions. Clearly it does not. Two years and seven months passed from the time Dabbs-Williams received the initial counterclaim in October 2007 and when it gave Westfield notice in June 2010. Courts have repeatedly held that much shorter delays precluded coverage. See, e.g., Am. Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1361, 1368 (N.D. Ga. 2010) (holding that nine month delay did not constitute notice "as soon as practicable"); Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins. Co., 652 F. Supp. 851, 856 (N.D. Ga. 1986) ("The Georgia courts have repeatedly held that where no valid

10

AO 72A
(Rev. 8/82)

excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law."); Kay-Lex Co. v. Essex Inc. Co., 649 S.E.2d 602, 608 (Ga. Ct. App. 2007) (delay of one year unreasonable as a matter of law). Accordingly, this Court holds that Dabbs-Williams's delay of over two and a half years before providing notice to Westfield did not constitute notice "as soon as practicable," and, thus, the policy does not cover Tillman's claims.

## CONCLUSION

Because Dabbs-Williams's proffered justification for the lengthy delay is unreasonable as a matter of law, summary judgment is proper. Accordingly, Plaintiff's Motion for Summary Judgment, Dkt. No. 24, is **GRANTED**.

**SO ORDERED**, this 27th day of September, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA